**Cynthia A. EBBERT, Appellant**

v.

**DAIMLERCHRYSLER CORPORATION**

No. 02–1503.

United States Court of Appeals, Third Circuit.

Argued Oct. 29, 2002.

Filed Feb. 4, 2003.

Gary W. Aber (Argued), Heiman, Aber, Goldlust & Baker, Wilmington, DE, for Appellant.

Gary M. Smith (Argued), Lewis, Rice & Fingersh, St. Louis, MO, for Appellee.

Caren I. Friedman (Argued), Equal Employment Opportunity Commission, Washington, DC, for Amicus Appellant.

Before NYGAARD, COWEN and MICHEL,* Circuit Judges.

## OPINION OF THE COURT

MICHEL, Circuit Judge.

Plaintiff Cynthia A. Ebbert brought an action against her former employer, DaimlerChrysler Corp., alleging that DaimlerChrysler failed to reasonably accommodate her spinal cord injury in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 (2000) *et seq.* ("ADA"). The District Court granted summary judgment to the defendant on the ground that Ebbert's complaint was untimely filed. *Ebbert v. DaimlerChrysler Corp.,* 192 F.Supp.2d 303 (D.Del.2002). The District Court based its decision on both the lapse of time and finding her ineligible for equitable tolling. *Id.* at 309. Ebbert's appeal focuses on two District Court findings: (1) that she had actual notice of the dismissal of her case by the Equal Employment Opportunity Commission ("EEOC"); and (2) that the statute of limitations period was started by oral notice before October 16, 2000 even though she did not receive any of the dismissal and notice letters sent to her by the EEOC until that date. The District Court concluded that telephone calls Ebbert had with EEOC staff gave her actual notice of the requisite statute of limitations information by August 2000 and because she had actual notice, the 90–day statute of limitations period for filing her ADA claim in federal court had long since expired by January 16, 2001 when she did

finally file. Ebbert contends that her pre-October notice was factually deficient and, in any event, that the District Court's interpretation of sufficient notice is erroneous as contrary to the EEOC's regulations. Ebbert and the EEOC, as amicus in this appeal,[1] both argue that this court must defer to the EEOC's understanding of the event that commences the limitations period, namely, receipt of a letter of notice. Ebbert also maintains that she was entitled to rely on the prior oral and written instructions of the EEOC telling her to wait for the letter. Thus, according to her, the limitations period could only have started when the letter was received.

This appeal presents the question of what constitutes sufficient notice under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) (2000), to start the 90–day limitations period. The District Court found that there was no genuine issue of material fact that Ebbert had actual notice not later than her August 2000 phone discussions with EEOC staff. We hold, however, that on the summary judgment record, DaimlerChrysler did not meet its burden of proving the absence of a genuine dispute of fact respecting proper notice. Missing from the defendant's evidence was any indication that Ebbert was told in the phone conversation of August 2000 that the 90–day limitations period was started by the phone call, as opposed to receipt of a letter of notice subsequently sent. Thus, we must conclude the District Court erroneously granted summary judgment. The judgment of the District Court will be reversed and the case remanded.

## I. Facts and Procedural History

Ebbert was employed by DaimlerChrysler at an assembly plant as an apprentice

---

* Honorable Paul R. Michel, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The EEOC both submitted a brief in this case and presented oral argument.

pipefitter. On September 7, 1995, Ebbert was injured in a motor vehicle accident. Her spinal cord injury caused complete paralysis from the waist down. She maintains that she requested an accommodation from DaimlerChrysler so that she could continue working for the company in some capacity and was refused.

On April 28, 1997, Ebbert filed a charge of disability discrimination with the EEOC. On February 24, 1998, she informed the EEOC that she had moved and gave her new mailing address. On March 17, 1999 she received, at her new address, a letter from EEOC Supervisory Investigator, Howard Gurmankin, informing her that the EEOC was going to dismiss her case and that "the Dismissal and Notice of Rights" which the EEOC would be sending to her would "allow" her to file a private suit if she wished. Ebbert telephoned in response and was told that the follow-up letter was in the mail. A "right to sue" letter may have been sent to Ebbert's former address instead of her current address but it is not clear.[2] In any event, Ebbert denies ever receiving the letter and there is no undisputed evidence that she did. After waiting a month, Ebbert telephoned the EEOC again and was told that the earlier letter had been premature and the EEOC had decided to reopen her case. Then after further investigation, the EEOC again decided to dismiss her case. The case log shows that Investigator Karin Porter told Ebbert on September 21, 1999 that the charge would be dismissed.[3] On November 4, 1999 the EEOC issued Ebbert a second notice letter but mailed the letter to her former address. Ebbert again denies having received this second letter and there is again no direct or undisputed proof that she did. On August 14, 2000 Ebbert sent a letter to Porter requesting a status update and shortly thereafter Porter informed her by telephone that her case was closed and that the letter had been sent some time ago. Ebbert recounted the phone conversation in her letter to Porter of August 23, 2000. On October 16, 2000 the EEOC sent Ebbert a third notice, this time to the correct address, and Ebbert instituted this lawsuit on January 16, 2001.

Ebbert testified at her deposition that she was aware that "after you receive [the notice letter], you've got 90 days" but was not sure who told her that. The trial court said that "[a]s best [sic] can be discerned from the record and the parties' briefs, this conversation [about the statute of limitations] appears to have occurred at some point during 1999." *Ebbert*, 192 F.Supp.2d at 305 n. 2. The trial court found that for purposes of summary judgment Ebbert had not received any notice letter before October 16, 2000 but concluded that Ebbert had other, actual notice before October 16, 2000.

The trial court also addressed her claim to equitable tolling. The trial court found that Ebbert was not diligent in pursuing her claim and concluded that, if nothing else, would prevent the court from allowing equitable tolling. The determination that Ebbert was not diligent was based on the finding that Ebbert "showed little concern for her case between approximately October 10, 1999 and August 2000." *Id.* at 308. The court also concluded that precedent showed it did not matter whether EEOC personnel misled the appellant into thinking that she had 90 days *upon receipt*

---

**2.** According to Gurmankin's November 20, 2001 affidavit, there was no copy of the letter in the EEOC files and the EEOC Case Log indicates that that the letter was not sent (but without any explanation of how that was determined).

**3.** Again, this is according to Gurmankin's November 20, 2001 affidavit.

of the notice letter, because a third party should not be able to destroy a defendant's immunity from untimely litigation. *Id.* at 309.

Finally, the trial court also concluded that Ebbert's argument that the October 16, 2000 "right to sue" letter "rescinded" the earlier letters had no merit because the EEOC regulations require other, specific actions in order for such letters to be revoked. As those actions were not taken in this case, the District Court concluded it does not matter that Gurmankin stated that the third letter rescinded the previous letters.

## II. Standard of Review

We exercise plenary review of the District Court's decision to grant summary judgment. *See Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See* F.R.C.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

■ If the employer in an ADA case asserts an affirmative defense, like the expiration of the statute of limitations as DaimlerChrysler did in this case, then the burden of proof for that defense rests solely on the employer. *See Williams v. Runyon,* 130 F.3d 568, 573 (3d. Cir.1997) (holding that the defendant has the burden

of proof regarding its affirmative defenses in Title VII actions). Proof of the expiration of the statute of limitations clearly requires proof of the lawful start date for the limitations period. It is with respect to this detail that we hold that Daimler-Chrysler did not meet its summary judgment burden and, therefore, the trial court's grant of summary judgment constituted reversible error.

### A.

■ For ADA discrimination claims like the one Ebbert has brought, 42 U.S.C. § 2000e–5(f)(1)[4] requires that upon dismissal of a charge, the EEOC shall "notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought."[5] Thus, the statute is clear that a dismissal by the EEOC followed by notice to the person aggrieved are the two events that together start the statute of limitations period. These are, therefore, also the two events that DaimlerChrysler had to prove occurred more than ninety days before Ebbert filed her complaint.

No one disputes that the EEOC dismissed Ebbert's case in November of 1999. Notice to the complainant is, thus, really what DaimlerChrysler needed to have proven more specifically. Determining whether DaimlerChrysler met its burden of proof requires a clarification of the underlying law regarding notification, namely defining "giving" notice under the statute. The key question for this case is, thus, what must notice entail: does notice under

---

**4.** The ADA incorporates by reference Title VII's "powers, remedies, and procedures." 42 U.S.C. § 12117 (2000). The relevant parts of Title VII are then codified at 42 U.S.C. § 2000e–5(f)(1).

**5.** Because F.R.C.P. 6(e) adds a rebuttable presumption of three days' mailing time to be

added to a prescribed period whenever a statutory period begins on receipt or service of notice (as opposed to the mailing of notice), the filing on January 16, 2001 would be timely under this limitations period, if the October 16, 2000 letter of notification started the limitations period.

42 U.S.C. S 2000e–5(f)(1) need to be in writing, and what information must it include. The statute offers no specific command about form or content. We must, therefore, turn to other sources to construe what "giving" notice means.

The EEOC, as amicus in this case, argues that its regulation which "enumerates the contents of a notice of right to sue, is entitled to deference" under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Chevron deference is appropriate for legislative regulations in which an agency interprets a statute or fills in a gap for which Congress delegated such authority to the agency. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778. It is not appropriate for agency regulations that merely implement a statute for which no delegation of authority was involved. *Id.* The EEOC contends that an express delegation by Congress occurred in 42 U.S.C. § 2000e–12(a) (2000) because the statute granted the EEOC the "authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions" of the statute. The EEOC asks this court to defer to the EEOC's reading of the regulations that the receipt of a letter of notice is the *only possible* event that starts the 90–day limitations period. This argument for deference is flawed.

### 1.

One flaw in the EEOC's argument for Chevron deference is that even if this court were to find a delegation of interpretational authority to the EEOC, the regulations themselves do not explicitly articulate the rule the EEOC argues for in this appeal. If the regulations had said explic-

itly that "giving" notice was not defined in the statute and as a result the agency defined it as meaning the receipt of written notice, then this court presumably would have to defer (assuming there was a delegation of such authority by Congress). However, nowhere do the regulations say that the 90–day statute of limitations period is commenced *only* by the complainant's receipt of a *written* form of notice. The most relevant regulation, 29 C.F.R. § 1601.19 (2002), the one addressing "no cause" dismissals by the EEOC, provides only that the EEOC "shall issue a letter," which "shall inform the person claiming to be aggrieved or the person on whose behalf a charge was filed of the right to sue in Federal District Court within 90 days of receipt of the letter of determination." 29 C.F.R. § 1601.19(a). Notably, all of the language is directed to EEOC personnel, none to the courts or complainants. In addition, the regulation in no way precludes notification by other means. It may be true that a common sense reading of the regulations suggests that they presume a writing, but that is not the same as their requiring a writing and excluding notification by other means. Indeed, in its brief, the EEOC states in an argument heading that the EEOC regulation "contemplates" that notice of right to sue will be in writing. This seems to be an accurate description. To say that a regulation "contemplates" something is to say that it is consistent with that something; it is not to say the regulation requires something.

Beyond that, related regulations direct the EEOC to issue written notices but again do not suggest that these are anything more than instructions to EEOC personnel.[6] Therefore, no EEOC regula-

---

**6.** 29 C.F.R. § 1601.18(e) explains only that for untimely-filed EEOC complaints or other complaints filed that fail to state a claim un-

der the relevant statutes "[w]ritten notice of disposition ... shall be issued." This suggests more an instruction for how EEOC staff

tion offers explicit interpretation of 42 U.S.C. § 2000e–5(f)(1) and no regulation includes any binding or restrictive language that purports to constrain courts in their construction of "giving" notice in 42 U.S.C. § 2000e–5(f)(1).

The EEOC's arguments about the regulations requiring a writing are, thus, flawed because no such requirement is found in the language of those regulations. The flaw, however, is not dispositive of the question of deference because we cannot say the EEOC's interpretation of its own regulations as *implicitly* requiring a writing is unreasonable. This court, therefore, cannot merely decline to defer to the regulations solely on the basis that they do not address the issue at hand. This court must instead reach the next question—about the authority to create such regulations—in order to decide whether the regulations as construed by the EEOC merit Chevron deference.

**2.**

 The dispositive flaw in the EEOC's argument for Chevron deference is that the power to create such a rule binding on courts is beyond the authority delegated to the EEOC. First, the rule the EEOC advocates—that only written notice can start the limitations period—is not a procedural rule of the EEOC for carrying out *its* duties, as we conclude 42 U.S.C. § 2000e–12(a) requires. The statute says

that it gives the authority for "suitable procedural regulations to carry out the provisions of the statute," but we infer that Congress intended to refer only to the provisions of the statute that apply to the administrative stage of discrimination complaints. Therefore, the authority delegated to the EEOC does not extend far enough to authorize its rule.

Second, the EEOC attempts to control the circumstances under which federal courts cannot dismiss complaints for late filing. Such power cannot be within the scope of the "procedural regulations," of 42 U.S.C. § 2000e–12(a). It is not within the scope not because it is not procedure but because it concerns court procedure, not administrative procedure. The EEOC certainly has broad procedural powers for the administrative stage of discrimination complaints, but we cannot see that Congress intended its authority to extend beyond the administrative stage into the judicial proceedings.

Therefore, any implicit or explicit definition by 29 C.F.R. § 1601.18, 29 C.F.R. § 1601.19, or 29 C.F.R. § 1601.28 of "giving" notice as used in 42 U.S.C. § 2000e–5(f)(1) as requiring receipt of a writing is beyond the power of the EEOC, an administrative agency, to impose on the courts, creatures of a separate and co-equal branch.[7] At issue here is the timeliness of a court filing, not of any filing with the EEOC. Thus, the administrative discrimi-

---

should effect this particular notice, than an instruction to the courts about the requirement of this form of notice or the invalidity of any other kind of notice. Similarly, 29 C.F.R. § 1601.28(e) applies to notices requested by complainants and is no more explicit, even though it is more extensive. *See infra* note 8. Although the EEOC correctly points out that 29 C.F.R. § 1601.28(e) clearly implies that notice of right to sue will be in writing, the regulation still does not announce any requirement and again reads more like an in-

struction to EEOC personnel than an interpretation of a statutory requirement.

7. Our holding in this case about the lack of delegated authority is limited not only to just this one administrative agency, but also to just these few of all EEOC regulations, and even then only to the specific issue of defining the statutory term "giving" of notice as commencing the limitations period. We do not purport to decide broader or more general delegation questions.

nation complaints are not implicated. Moreover, in 42 U.S.C. § 2000e–5(f)(1) Congress created the right to sue. The EEOC does not grant the right. If Congress wished to delegate to the EEOC control over that right to sue, Congress surely would have had to include such a provision in 42 U.S.C. § 2000e–5(f)(1). The absence of any such provision, combined with the affirmative grant of the right to sue in 42 U.S.C. § 2000e–5(f)(1), which lends significance to the omission, show that there was no such delegation by Congress. The delegation made in 42 U.S.C. § 2000e–12(a) should, therefore, be understood as limited, and as not including procedures applicable in district courts.

Further indication that this is not a procedural rule that falls within the domain of the agency is that no possible decision by us in this case could control how the EEOC administers itself or adjudicates charges filed with it. The EEOC remains free to adopt any procedure it wants for the management of dismissals, regardless of this court's decision about when the limitations period commences.

■ The EEOC points to no other statutes or other manifestations of congressional intent to delegate authority to the EEOC to promulgate regulations to constrain courts in construing "giving" notice. The only additional suggestion of a delegation of authority is in the EEOC regulations themselves that suggest that the EEOC understood Congress to have delegated the authority to promulgate regulations affecting the limitations period and complainants' access to the courts [8] but this understanding alone cannot justify granting Chevron deference, especially in the face of the background limit in scope that we have inferred exists.

■ Third Circuit case law makes it quite clear that deference to agency regulations is appropriate where Congress has directed the agency to promulgate regulations with a particular purpose. *See, e.g., Helen L. v. DiDario,* 46 F.3d 325, 331–32 (3d Cir.1995) (holding that "[b]ecause Title II was enacted with broad language and directed the Department of Justice to promulgate regulations ... the regulations which the Department promulgated are entitled to substantial deference"). The converse is, however, also true: where Congress has not delegated authority to an agency, no deference will be applied, especially where agency regulations are construed to cover more than the agency's own function or tasks, as in this case. The

---

**8.** 29 C.F.R. § 1601.28(e) (2002) applies to notices requested by complainants and provides:

Content of notice of right to sue. The notice of right to sue shall include:

(1) *Authorization* to the aggrieved person to bring a civil action under title VII or the ADA pursuant to section 706(f)(1) of title VII or section 107 of the ADA within 90 days from receipt of such *authorization;*

(2) Advice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate;

(3) A copy of the charge;

(4) The Commission's decision, determination, or dismissal, as appropriate.

(emphases added). The references to "authorization" do suggest that the EEOC's understanding was that it had the power to constrain access to the courts. Unlike the EEOC's interpretation of its own regulations, the interpretation of statutes is the prerogative of the courts in the absence of a congressional mandate specifying otherwise. *See F.E.C. v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) (explaining that "[t]he interpretation put on the statute by the agency charged with administering it is entitled to deference, but the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement" (citations omitted)).

fact that notification by the EEOC commences the limitations period is more of a judicial matter than one that implicitly involves a grant of authority to the EEOC. *See Hornsby v. United States Postal Serv.,* 787 F.2d 87, 90 (3d Cir.1986).[9]

Whether or not Congress delegated the authority to the EEOC to create regulations defining "giving" notice is a close question and we admit that our interpretation of the scope of 42 U.S.C. § 2000e–12(a) is not based on any explicit statements by Congress. We base our limited interpretation on circumstantial evidence and our own judgment, knowing that if we have misunderstood Congress' intentions, Congress has the power to explicitly overrule our interjection. We rely on the logic that Congress could not have meant to exclude this category of lawsuits from the normally applicable legal doctrines without an explicit statement to that effect (and indeed all of the parties in this case and the trial court judge took for granted that the courts had the power to apply the doctrine of equitable tolling to the limitations period). The normally applicable legal doctrines include determining when the cause of action accrued and whether the running of the limitations period should be equitably tolled. Thus, the beginning of the limitations period, like the end, is to be decided by courts. We are further persuaded to infer a limitation in 42 U.S.C. § 2000e–12(a) by the fact that questions of timeliness under 42 U.S.C. § 2000e–5(f)(1) only arise on motions *before* courts. Judges deciding motions to dismiss complaints as untimely filed are thus the sole arbiters. To say that they do not have the authority to decide timeliness, therefore, would be anomalous.

We have carefully considered all of the contrary arguments presented to us, but none sway us. Ebbert argues that "[t]his Court has routinely held that such EEOC regulations are to be granted a 'great deal of deference'" and cites several cases for this proposition, the implication presumably being that the court must do so again in this case. In making this argument, Ebbert ignores the specific facts involved in each of the cases she cites that actually distinguish them from the instant case and make conclusions drawn from them inapplicable. First, Ebbert's citing to *Matczak v. Frankford Candy and Chocolate Company,* 136 F.3d 933 (3d Cir.1997), is inappropriate because *Matczak* involved the question of whether the court should defer to the EEOC's interpretation of its own regulations, not the EEOC's interpretation of a statute, as is at issue in this case. Moreover, *Matczak* actually dealt with an appendix to EEOC regulations, to which this court specifically held it would *not* give Chevron deference. *Id.* at 937.

---

**9.** The court in *Hornsby* explained that it was "entirely to be expected that in drafting the statute of limitations for bringing such a cause of action Congress would key the commencement of the running of the time bar to notice to prospective plaintiffs that the precondition for lawsuits had been satisfied. It would have made little sense to commence the running of a statute of limitations upon the happening of an event of which the holder of the cause of action in question had no knowledge." 787 F.2d at 90. Thus, convenience is all the court in *Hornsby* saw as the basis of coupling the start of the limitations period to the EEOC's giving of notice in 42 U.S.C. § 2000e–5(f)(1). *See also Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir. 1987) (holding, in a case factually similar to this one, that a discrimination lawsuit was time-barred whether or not the plaintiff received an initial notice letter because she admitted that she had "actual knowledge" of her "right to sue" one year before she did file suit, thereby ignoring any EEOC regulation that purported to have the authority to require actual receipt of a letter to start the limitations period).

The second case Ebbert relies on, *Deane v. Pocono Medical Center*, 142 F.3d 138, 143 n. 4 (3d Cir.1998) (en banc), is equally distinguishable. The court in *Deane* held that it would give Chevron deference to the EEOC regulation, 29 C.F.R. § 1630.2 (2002), defining "regarded as" being disabled because 42 U.S.C. § 12116 (2000) delegated authority to the EEOC to implement Title I of the ADA. *Id.* at 143 n. 4. Unlike this case, in *Deane* there was a specific delegation by Congress of authority to fill in admitted gaps (or vague points) in the relevant statute (presumably) because Congress wished to capitalize on the agency's expertise in such matters. *Id.* The full quotation from *Deane* is: "[r]egulations such as *these* are entitled to substantial deference." *Id.* (emphasis added). To ignore the regulations actually involved and substitute others that are fundamentally different is an unmerited extension of the holding of *Deane*. Moreover, in this case, the proposed delegations—the interpretation of a statute and the measurement of limitations periods—are clearly ones in which the courts have expertise, not the EEOC.

Third, Ebbert quotes *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 515 n. 8 (3d Cir.2001), and correctly explains that it suggests that the court will defer to EEOC authority for procedural purposes under the enforcement provisions contained in 42 U.S.C. §§ 12111–12117 (2000). It is, however, a leap from this accurate statement of law to the idea that the court must also defer to the EEOC on matters of statutory interpretation found outside 42 U.S.C. §§ 12111–12117, namely, for the definition of "giving" notice in 42 U.S.C. § 2000e–5(f)(1). The latter statute is not administered by the EEOC under 42 U.S.C. § 12116 and it, moreover, governs the accrual of causes of action for Article III courts, rather than relating to the procedure of the EEOC in handling complaints administratively so it is difficult to justify any extension of the reasoning in *Tice* to deference in this case.

Similarly, the concurring opinion cited by both the EEOC and Ebbert, *EEOC v. Commercial Office Products Company*, 486 U.S. 107, 125, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988)(O'Connor, J., concurring), that deference is "particularly appropriate" where a regulation involves a "technical issue of agency procedure," is inapt because a rule requiring receipt of a notice letter to start the limitations period is not a "technical issue of *agency* procedure." (emphasis added).

■ The EEOC also argues that the EEOC's regulation is entitled to deference because it "reflects a reasonable interpretation of the statute." The fact that a regulation may be reasonable is not, by itself, a basis for giving it Chevron deference; rather, it is a reason to treat it, at most, as persuasive authority. Indeed all of the EEOC arguments about the negative practical effect for the agency and the courts of adopting any rule besides the one the EEOC espouses and the impracticality of defendants meeting the burden of proof under any other rule are merely persuasive arguments. They are not grounds for this court's deferring to the EEOC.

Finally, the EEOC also proposes a comparison between this case and *Allen v. United States*, 542 F.2d 176, 180 (3d Cir. 1976) (holding that the Civil Service Commission's failure to notify the complainants of their right to file a civil action and the time limit for doing so rendered the Commission's opinion a non-final action). Beyond stating that a comparison to the *Allen* case is "useful," the EEOC offers no additional insight into how it believes *Allen* bears on this case. Indeed, aside from some superficial factual similarities, *Allen* is not very relevant because its holding

focuses exclusively on what constitutes a "final action." *Id.* at 179–80. In this case, it is not contested that the EEOC dismissed Ebbert's complaint and that the EEOC's decision was duly finalized. The issue here is whether the EEOC had any authority to constrain a definition at the heart of the second prerequisite to starting the limitations period—the definition of "giving" notice—to exclude certain forms of notice from starting the limitations period. We do not dispute the fact that the EEOC may have great authority to set policy within its own sphere; that authority is, however, not implicated in this case.[10] The conclusion in *Allen*, that "the [Civil Service] Commission's regulations defining the content of its final action are valid," is, therefore, not inconsistent with the court's holding that Chevron deference is unmerited in this case. *Id.* at 180.

Since we hold that Congress did not delegate interpretational authority to the EEOC to dictate whether courts are time-barred from hearing certain cases, there is no basis for applying Chevron deference.

**B.**

 Instead of Chevron deference, therefore, this court will afford only Skid-

more deference to the EEOC regulations and other articulations of policy. Under *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944),[11] the degree of deference to an agency's position depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore deference can, therefore, actually be quite limited, indeed, almost non-deferential. *Id.* With respect to the EEOC regulations, this court need afford very little deference because none of the regulations contain reasoning or any hallmark of deliberation that could be persuasive to a court. As explained ante at 108, not only does 29 C.F.R. § 1601.19(a) provide no explanation of the rationale underlying the instructions that the EEOC "shall issue a letter" and that it "shall inform" the complainant, but it also only "contemplates" that notice of right to sue will be in writing; it does not require it.

Related regulations, 29 C.F.R. § 1601.18 (2002) and 29 C.F.R. § 1601.28,[12] are no

10. The EEOC also quotes the *Allen* opinion for saying "it makes eminent good sense to recognize that the power of starting [the limitations period] running is in the hands of the [Civil Service] Commission, and that its regulations provide an unequivocal means for excising that power." 542 F.2d at 180. Putting aside the fact that there was a different statute involved in *Allen* which may have delegated greater or different authority to the Civil Service Commission than the ones affecting the EEOC in this case, it is important to note that the quotation from *Allen* cited directly above gives the Civil Service Commission the power to start the running of the limitations period but says nothing about giving it the power to *interpret* when the limitations period starts running. Our holding in this case distinguishes between these powers. The EEOC is the agent whose actions may start the limitations period but it is the courts that must be

the interpreters of those actions because that preserves the ability of the agency to administer its own procedures and the courts to create their own jurisprudence.

11. *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161, held that though not binding, courts must give nonlegislative rules some deference, with the weight given to rulings, interpretations and opinions of an agency depending upon the quality of the agency's consideration and reasoning as ascertained by analyzing a number of factors.

12. 29 C.F.R. § 1601.18(e) explains only that for untimely filed EEOC complaints or other complaints filed that fail to state a claim under the relevant statutes "[w]ritten notice of disposition ... shall be issued." 29 C.F.R. § 1601.28(e) similarly contains only practical

more explained or persuasive and, therefore, warrant no more deference than 29 C.F.R. § 1601.19. Neither regulation provides commentary to suggest that it was intended to control access to the courts. In fact, the only explanation of purpose in the EEOC's regulations is in 29 C.F.R. § 1601.1 (2002) and it describes the "regulations set forth in this part" as containing the "procedures established by the Equal Employment Opportunity Commission for carrying out *its* responsibilities in the administration and enforcement of title VII." (emphasis added). As the subsequent subsections of § 1601 must be construed in light of this "purpose" statement, there is no reason to defer to any reading (or misreading) of the regulations that purports to constrain matters beyond the procedures of the EEOC itself.

■ We also decline to defer to the explanation of the agency's position in its Compliance Manual.[13] As an internal document, it is automatically at the lower end of the Skidmore scale of deference. An internal agency manual is not subject to the kind of deliberateness or thoroughness that gives rise to significant deference. See *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. Moreover, as a "compliance manual," by definition it is an instruction *to* agency personnel. It, thus, reflects how the EEOC wishes its employees to act in light of the statute, not necessarily what the statute itself requires of complainants. So although the EEOC, as amicus, now argues that the 90–day period does not start until a notice letter is received by a complainant and this view is reflected in the EEOC Compliance Manual, it is not binding on us. The EEOC's opinion of what is required to implement the statute is entitled to respect from this court, but we simply cannot defer to the opinion insofar as it would dictate the interpretation of statutory time bars by Article III courts.

### C.

■ Thus, while affording due respect to the EEOC's position and agreeing that ordinarily [14] "giving" notice should be construed to mean that a dismissal letter from the EEOC could be deemed to have been received [15] at the correct address, we

instructions. *See supra* note 8. Neither regulation offers any justification.

13. In the EEOC's Compliance Manual there is an explicit requirement that complainants receive a written form of notice in order to start the 90–day period. 1 EEOC Compl. Man. (BNA) 4:0003 § 4.5(a)(2) (December 5, 2000) (explaining that a letter must be sent to the charging party by certified mail and that "[w]hen all issues affecting the charging party are no cause, the date the [letter of determination] is received begins the Title VII/ADA/ADEA 90 day litigation period.").

14. It is still true as the EEOC quotes in its brief that "[t]he on-set of the 90–day period is *generally* considered to be the date on which the complainant receives the right-to-sue letter." *Burgh v. Borough Council of Montrose,* 251 F.3d 465, 470 (3d Cir.2001) (emphasis added). It is, however, misleading to suggest that *Burgh* makes receiving a "right-to-sue letter" a prerequisite to a Title VII suit. The

statement in *Burgh,* that a "complainant may not bring a Title VII suit without having first received a right-to-sue letter" must be read in the context of the assumption that a "right-to-sue letter" will follow an exhaustion of agency remedies; notice of the latter being the actual prerequisite to a Title VII lawsuit. *Id.* This distinction is made clear by the citation in *Burgh, id.,* to *Anjelino v. New York Times Co.,* 200 F.3d 73, 87 (3d Cir.1999), and *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir.1997), both of which refer only to exhaustion of remedies.

15. We refer to the case where a letter can be "deemed" received, not one where the letter need be actually received by the complainant because we should leave undisturbed all of the precedent in other circuits holding that a notice letter correctly delivered to a complainant's residence or postal box constitutes notice even though the complainant may not have seen the notice him or herself at the time

must make our own analysis about the meaning of the statute. Because the statute does not say that notice must be in writing, we hold that oral notice can suffice to start the 90–day period. Oral notice must be equivalent to written notice. *See, e.g., Ball v. Abbott Advertising, Inc.,* 864 F.2d 419, 421 (6th Cir.1988) (holding that a discrimination lawsuit was barred by the statute of limitations because the plaintiff's lawyer was told on the telephone that a "right to sue" letter had been issued and "courts are not required to proceed as if no such notice had been given").[16] It simply would not make sense to force courts and defendants to wait for a specific form of notice in situations where a plaintiff is fully aware of the deadline he or she must meet to prosecute a lawsuit. The opposite rule would mean, in the extreme case that the limitations period would not begin to run for years, or even ever, if the EEOC never corrected its addressing. Permitting oral notice to start the limitations period strikes a fairer balance between a

defendant's interest in a quick resolution of charges and clear finality for charges that will not become lawsuits, and a plaintiff's interest in having adequate opportunity to bring suit and a clear understanding of when and where to do so.

In this case, oral notice was just as complete as written notice in all respects except one. There is no proof that Ebbert knew when the 90–day statute of limitations period would start as a result of her phone conversations with the EEOC. More specifically, no evidence shows that Ebbert was told or otherwise knew the 90 days would start running from the date of the conversation. DaimlerChrysler had the burden of proving the oral notice was as comprehensive as the written version and, in particular, that it included an explanation of the "start date." Daimler-Chrysler's evidence of notice, however, was factually incomplete because Porter was never deposed and there was no other evidence of what she told Ebbert on the

---

of delivery. *See Zillyette v. Capital One Financial Corp.,* 179 F.3d 1337, 1340–41 (11th Cir.1999) (giving a survey of cases in different jurisdictions accepting various forms of constructive receipt as causing the start of the 90–day period). *Cf. Hornsby,* 787 F.2d at 91, 91 nn.4–7 (also surveying cases in different jurisdictions permitting constructive receipt but distinguishing the case at hand; holding that a postal form notifying the plaintiff that a letter addressed to him could be picked up at the Post Office but not identifying the sender, did not, by itself, constitute notice of an EEOC final action even if other circumstances short of actual receipt of the written notice would have sufficed).

16. While the notice deemed to be sufficient to start the limitations period in *Ball* may have been less complete than the one held as required by this court (see post at 16), factual differences between the two cases may account for the Sixth Circuit's not requiring as complete a form of notice (or perhaps not finding it necessary to mention the contents of the notice in detail in its opinion). In *Ball* it

was the plaintiff's lawyer who was told by the EEOC about its previously mailed letter. The lawyer was perhaps assumed by the court to have had knowledge of the contents of a typical "right to sue" letter, or thought to understand the need to inquire about the start date for the limitations period. The court may have assumed that he had implicit notice of when the limitations period would start or sufficient warning that he should have inquired about it. In addition, unlike in this case, the plaintiff in *Ball* did not inform the EEOC about her change of address. The fact that she did not receive the letter that would have given her complete notice was, therefore, her own fault. She, perhaps, waived her right to complete notice. Whatever the precise differences, this court is persuaded like the court in *Ball* that oral notice can be sufficient, but will diverge from *Ball* to the extent that *Ball* did not require as complete a form of knowledge. The specific facts in this case demonstrate to this court that the further requirement of completeness is essential. Here the recipient of oral notice is a layperson, not an attorney.

phone. All we know about Porter's August 2000 conversation with Ebbert is derived from Ebbert's August 23, 2000 letter to Porter.[17] No evidence shows that Ebbert knew that the limitations period began as of the August 2000 phone call. Therefore, since the exchange of letters entered into evidence and the testimony offered omit one of the necessary elements of notice, we hold DaimlerChrysler failed to establish that it is entitled to judgment. We must reverse the trial court's grant of summary judgment.

### D.

DaimlerChrysler additionally argues that we should conclude that one of the notice letters sent before October 16, 2000 was received by Ebbert, even if misaddressed, because of Ebbert's use of mail forwarding through the post office and her frequent contact with an occupant of her former address. Since Ebbert's receipt of those letters was a disputed fact in light of Ebbert's deposition testimony, the District Court properly construed the evidence as creating genuine issues of material fact respecting receipt of the letters by Ebbert. It is inappropriate that DaimlerChrysler argues with this, as genuinely disputed facts cannot be the basis of summary judgment.

### E.

DaimlerChrysler also contends that the October 2000 notice letter issued by the EEOC is invalid and cannot rescind earlier letters because it was not issued after a formal reconsideration. In so arguing, DaimlerChrysler conflates the two functions of the letter. It is true that a notice letter is not a valid dismissal of a complaint if an earlier notice letter has been issued and there has been no revocation of the earlier letter by a formal reconsideration of the complaint; however, that does not mean that a subsequent letter is not valid for notice purposes even without a revocation. The October 2000 letter does not supercede the earlier letters; it merely provides notice.[18] As a notice-giving document it is valid.

### F.

Finally, we address the District Court's denial of Ebbert's request for tolling of the 90–day limitations period. On appeal, DaimlerChrysler maintains that Ebbert should have asked for a notice letter after her September 1999 phone conversation with Porter in which Porter told her that her case would be dismissed. DaimlerChrysler further asserts that Ebbert neither asked for a letter in that phone conversation, nor followed the September phone conversation with other solicitations for a letter, nor made any inquiry until August of the following year. Thus, Ebbert was not diligent. Additional proof of Ebbert's nondiligence, DaimlerChrysler argues, also lies in the delay between Ebbert's August 2000 phone conver-

---

**17.** In reference to her phone conversation with Porter, Ebbert's August 23, 2000 letter to Porter says only: "I was disappointed and surprised when you called in reply to my letter of Aug 14th and told me that my case had been closed and the Letter of Right to Sue had been sent out quite some time ago." and "[y]ou said over the phone that the papers from your office had gone to my old address and accused me of not informing the EEOC of my change of address." There was no further explanation of what Porter told her.

**18.** Because the function of a letter in October 2000 was only notice-giving it might have been more appropriate for the EEOC to send Ebbert another copy of the November 1999 letter (and more consistent with the EEOC's own policy); however, since the only difference between the letters is the date printed on them, this is an inconsequential matter.

sation with Porter that alerted Ebbert to the fact that her complaint had been dismissed the previous November, and Ebbert's filing suit.

Ebbert counters these arguments by saying that she was entitled to tolling because she was unrepresented and "following the EEOC's direction, advice, and instructions." She cites precedent for the idea that inadequate notice may constitute grounds for tolling and factually distinguishes her case from those that the District Court cited in refusing tolling. Ebbert also contends that, in particular, any period of inactivity should be viewed in the context of her overall history of "continual and consistent contact with the EEOC" and as subsequent to the denial of her request for meetings with EEOC staff in person. Ebbert does not assert any legal error, only that the Court's description of the factual situation was "incomplete and inaccurate." Her other statements—for example, that the District Court's finding of non-diligence was "overly harsh"—are also more attempts to persuade this court that the opposite ruling on equitable tolling would have been a better choice, than arguments of reversible error.

■ We exercise plenary review over "the District Court's choice and interpretation of applicable tolling principles and its conclusion that the facts [prevent] a tolling of the statute of limitation." *Lake v. Arnold*, 232 F.3d 360, 365 (3d Cir.2000) (citing *Vernau v. Vic's Mkt., Inc.*, 896 F.2d 43, 45 (3d Cir.1990)). Because the record shows that the District Court's conclusion had sufficient evidentiary support, we conclude that the trial court judge did not err in denying equitable tolling. Moreover, summary judgment was appropriately granted on this issue because the District Court's decision is based on a correct analysis of the law and on undisputed facts.

Therefore, if, on remand, the District Court concludes the defendant has proven complete oral notice, and therefore, the start date for the 90–day period is August 2000 or some other time before October 16, 2000, the District Court need not reanalyze equitable tolling or allow the parties to reargue it. If, however, evidence introduced by the parties on notice also relates to tolling, the District Court, of course, remains free to reconsider equitable tolling.

### G.

We need not reach any of the arguments concerning the merits of Ebbert's ADA claim since the trial court did not.

In fact, the record was not sufficiently developed to permit that court's making any determination on the merits. On remand, discovery of course remains governed by the sound discretion of the District Court. Despite plaintiff's request, we make no ruling respecting discovery.

### IV. Conclusion

For the foregoing reasons, we reverse the summary judgment of the District Court that plaintiff's claim is time-barred and remand the case for further proceedings consistent with this opinion.