[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14465

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 6, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-01328-CV-CC-1

CHRISTINE KERR,
PAT GREEN SMITH,

Plaintiffs-Appellants,

versus

MCDONALD'S CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 6, 2005)**

Before BIRCH, CARNES and FAY, Circuit Judges.

PER CURIAM:

This appeal requires us to address whether the limitations period for filing an action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 20 U.S.C. §§ 621-34, begins to run only upon actual receipt of a written notice of the right to sue or whether, under the test established in our circuit, a complainant's actual knowledge that investigation of her claim has been terminated may be sufficient to cause the time for filing to begin running within a reasonable time after notice of the complainant's requested right-to-sue notice has been mailed. The district court determined that a claim filed nearly 120 days after right-to-sue letters were mailed, although within 90 days of the time complainants claimed first to have received them, was untimely. We AFFIRM the court's order.

## I. BACKGROUND

Christine Kerr and Pat Green Smith, Plaintiffs-appellants in this case, both over fifty years old, were terminated from their employment with Defendant-appellee, McDonald's Corporation, in October 2001. They filed a class-action age discrimination claim against McDonald's. McDonald's moved to dismiss on the ground that the complaint was time-barred because right-to-sue ("RTS") letters issued by the Equal Employment Opportunity Commission ("EEOC") were dated 31 December 2002, but the complaint was not filed until 15 May 2003 (well over

2

90 days later).  Kerr and Green Smith assert that their complaint was timely because they did not receive the letters until 15 February 2003.[1]

In April 2002, Kerr and Green Smith filed age discrimination charges with the EEOC.  At the time, Brenda Webb was a unit supervisor at the Atlanta office of the EEOC.  April Sims was the investigator assigned to investigate Kerr and Green Smith's claims.  Both Kerr and Green Smith communicated with Sims about their respective charges at least once a month throughout the course of the investigation.

Near the end of December 2002, during a telephone conversation, Sims told Kerr that the EEOC investigation of her claim was finished and gave a tentative conclusion, subject to the approval of her supervisor, that there was not enough evidence to issue a finding in Kerr's favor.  Sims also explained that the EEOC would issue an RTS letter without making any official finding if Kerr requested such a notice.  Kerr admits that by early January 2003, at the latest, she knew the EEOC had ended its investigation and processing of her charge.  Sims had a similar telephone conversation with Green Smith in December 2002.

_____

[1]Green Smith and Kerr have both produced 9" x 12" manila envelopes, which are marked "CRTIU" and postmarked 14 February 2003.  The envelopes contained file copies of their respective RTS letters along with the rest of their EEOC files.  They assert that neither of them received any copy of an RTS letter prior to receiving these envelopes.  Green Smith has produced the original contents of her envelope as well as an empty white business envelope, identified by the EEOC as the type it uses to mail RTS letters.  This second envelope is post-marked 9 January 2003, but Green Smith asserts that she is no longer in possession of the contents and cannot remember what they were.  Kerr has not produced the contents of any envelope or any copy of any RTS letter she received.

3

A few days before 30 December 2002, by telephone in each case, both Kerr and Green Smith orally requested RTS letters. According to Webb, an RTS letter can be issued by the EEOC based upon an oral request by a charging party.[2] Still, the EEOC has a practice of following up all oral requests and sent a letter each to Kerr and Green Smith on 30 December 2002, asking for written confirmation. Each of them was instructed to fill out an enclosed RTS letter request form and return it to the EEOC by 8 January 2003. Kerr signed hers and sent it back on 3 January 2003. Green Smith signed hers on 2 January 2003 and mailed it on 3 January 2003. According to an EEOC log sheet, the forms were received by the EEOC on 7 January 2003. The letter accompanying each form clearly explains that issuance of an RTS letter represents the end of any formal EEOC action in the matter.

Kerr and Green Smith both assert that they did not receive any right to sue letters until sometime in February.[3] Despite having made the requests in early January, despite the importance of these letters to the federal claims they intended

---

[2]EEOC regulations specify that requests for RTS letters made in writing be honored promptly, but does not impose a requirement that all requests be made in writing. See 29 C.F.R. § 1601.28(a)(1).

[3]Kerr claims she received the first copy of her right to sue letter on 15 February 2003 in the manila envelope containing her entire EEOC file. Green Smith has made a similar assertion but has also elsewhere claimed that she received her right to sue letter as early as 2 February 2003.

to file, and despite Green Smith's testimony that her RTS letter was important to her and that she was "looking for and waiting for" it to arrive in the mail, neither Kerr nor Green Smith contacted Sims or anyone else at the EEOC after 3 January 2003 to inquire about the apparently missing letters.

Both RTS letters were signed by Webb and dated 31 December 2002.[4] General EEOC practice is to mail them out the day they are dated, or within the following two days, at the latest. Because such letters are mailed by a clerk, however, the exact date of mailing is not confirmable. Evidence in the record about specific EEOC office procedures related to the preparation and mailing of RTS letters and the closure of files sheds some light on the issue. First, as a rule, files are not submitted for closure until the RTS letters have been sent out. Second, the normal practice of the EEOC is to send out RTS letters to the charging party and the respondent at the same time. Finally, the majority of RTS letters are sent out tri-folded in regular white business envelopes. Investigation files are returned to charging parties by a wholly different department, in large manilla envelopes marked "CRTIU," and only after the file has been closed. See 29 C.F.R. §

---

[4]Webb claims to have dated one of the letters herself, but not the other. Confusion over the exact dates on the log sheets may come from the fact that the RTS letters could have been prepared on the basis of the oral requests and then held for receipt of the written confirmation on 7 January 2003.

1610.17(g) (request for copy of investigation file in an ADEA case will be denied unless case has been closed).

Dates on the routing sheets for both Kerr and Green Smith indicate that Webb instructed the clerk to copy and mail the RTS letters on 31 December 2002.[5] Kerr's file was submitted for closure on 8 January 2003.[6] As to Green Smith's file, the date it was submitted for closure is somewhat illegible, though it is clearly a date before 8 January 2003 (it appears to be 30 December 2002). Thus, per EEOC office procedure, even if the RTS letters were not mailed as early as 31 December 2002, they could not have been mailed any later than 9 January 2003, the day after Kerr's file was submitted for closure. After receiving copies of letters dated 31 December 2002 in mid February, neither Kerr nor Green Smith called to inquire about the discrepancy in dates.

The district court granted summary judgment in favor of McDonald's finding that Kerr and Green Smith had failed to file their employment discrimination claims within the applicable 90-day limitations period. Kerr and Green Smith argue that a genuine issue of material fact remains as to when they actually received the letters, and that, because the court failed to construe this

---

[5]There is some confusion as to this date on the routing sheet for Kerr's file. However, Webb testified that she directed the clerk to copy and mail the letter on 31 December 2002.

[6]Although the routing sheet says 8 January 2002, all parties agree that the year was inadvertently written in error and should have been 2003.

6

disputed evidence in their favor, summary judgment was improperly granted. McDonald's argues that, because Kerr and Green Smith had knowledge of their right to sue and had requested official notice thereof, the time for filing should begin within a reasonable time after the letters were mailed, rather than with their actual receipt of file copies.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo viewing the evidence in the light most favorable to the party opposing the motion. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). Under the ADEA, "a civil action may be brought . . . within 90 days after the date of the receipt of . . . notice [of dismissal of the charge]." 29 U.S.C. § 626(e). As we have explained, the 90 days begin to run from the time the "complainant has adequate notice that the EEOC has dismissed the Charge." Santini v. Cleveland Clinic Florida, 232 F.3d 823, 825 (11th Cir. 2000). Once a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement. Green v. Union Foundry Company, 281 F.3d 1229, 1233-34 (11th Cir. 2002).[7] To determine whether the complaint in this case was timely, we

_____

[7]Kerr and Green Smith's claim that the court impermissibly shifted the burden of proof has no merit. The Third Circuit's holding in Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 108 (3d Cir. 2003), is not persuasive because we have explicitly held that the plaintiff bears the burden of proof. The argument that our circuit is split is also meritless. Kerr and Green Smith

7

will first examine the record for any remaining disputed issues of fact and then examine the law in our circuit as to the appropriate trigger for the 90-day limitations period.

A. Remaining Issues of Disputed Fact

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). A fact is material for the purposes of summary judgment only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Kerr and Green Smith have clearly demonstrated a dispute as to exactly when (between 31 December 2002 and 9 January 2003) the RTS letters were mailed and as to when they each first received copies thereof. Summary judgment

---

misunderstand the holding in Mack v. Anderson Electric Company, 580 F.2d 191 (5th Cir. 1978), where we reversed summary judgment, finding a genuine issue of material fact as to whether complainant's son had signed for receipt of an RTS letter and complainant testified that she did not receive the letter. We explained that "issues which turn on the credibility of affidavits are particularly inappropriate for summary judgment." Id. at 192. Nothing in that case placed the burden of proof on the defendant.

8

in favor of McDonald's would thus be improper if facts assumed as to these issues were material to the analysis.

The record establishes, however, that both Kerr and Green Smith knew for certain no later than 3 January 2003 that the EEOC had completed its investigation of their claims and would either issue determinations (most likely finding no violation) or, should Kerr and Green Smith so request, issue RTS letters. Understanding that issuance of those letters would represent the end of EEOC involvement, both Kerr and Green Smith chose to request letters. They filled out the forms they had received accompanied by letters explaining the process, and returned the forms to the EEOC on 3 January 2003. No genuine dispute of fact has been raised as to this point.

Neither has any genuine dispute been raised as to whether the original copies of the RTS letters were mailed. Testimony concerning specific office procedures for preparing and mailing notices in addition to evidence of mail received from the purported sender at the same address (and by other designated recipients in the normal course) is sufficient to raise a presumption of properly mailed documents. Gonzalez Packing Co. v. East Coast Brokers & Packers, Inc., 961 F.2d 1543, 1544-46 (11th Cir. 1992).

In this case, Webb's testimony regarding specific EEOC procedures for preparation and mailing of RTS notices, especially as it relates to procedures for the closure of files, stands uncontested. Both Kerr and Green Smith have produced envelopes indicating that they did receive mail from the EEOC at the addresses listed on their RTS letters. Additionally, there is evidence that McDonald's outside counsel received a copy of the RTS letter issued to Green Smith no later than 14 January 2003, and a copy of the letter issued to Kerr no later than 10 January 2003. All this is sufficient to raise a presumption that the notices were properly mailed.

In sum, although Kerr and Green Smith have raised a factual dispute as to exactly when the RTS letters were mailed, the only reasonable conclusion to be made based on the record is that they were mailed no later than 9 January 2003. The date of actual receipt is material to the summary judgment analysis only if there was no adequate notice prior to actual receipt.

B. Adequate Notice

We have said generally that "statutory notification is complete only upon actual receipt of the right to sue letter." Franks v. Bowman Transp. Co., 495 F.2d 398, 404 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747 (1976). However, we do not employ an rule determining when a complainant has received notice of the right to sue. See Bell v. Eagle Motor Lines, 693 F.2d 1086, 1087 (11th Cir.

10

1981).  Rather, we have imposed upon complainants some "minimum responsibility . . . for an orderly and expeditious resolution" of their claims and we have expressed concern over enabling complainants to enjoy a "manipulable open-ended time extension which could render the statutory minimum meaningless." Zillyette v. Capital One Financial Corp., 179 F.3d 1337, 1340 (11th Cir. 1999) (citation omitted); see also Bell, 693 F.2d at 1087.  In our circuit, the 90-day limitations period is to be analyzed

> on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control.

Zillyette, 179 F.3d at 1340 (citation omitted).

Most cases addressing receipt of notice have analyzed circumstances in which an RTS letter was mailed to a complainant's address, and that complainant did not receive it either because another person signed for it, or because the complainant failed to retrieve it from the post office or mail box.  Receipt is presumed when a complainant is unable to show that her failure to receive an RTS letter was in no way her fault.[8]

---

[8]See, e.g., Green, 281 F.3d at 1234 (6 December 1999 filing of claim untimely when prisoner's RTS letter was sent to home address listed in file on 31 August 1999 and wife could provide no evidence of the date of receipt to rebut presumption of timely delivery in normal course); Zillyette, 179 F.3d at 1338-41 (suit dismissed as untimely where postal service left

11

Kerr and Green Smith both claim they first received copies of their RTS letters in mid-February, denying any knowledge as to what might have happened to the original copy of either letter. Under the rule of <u>Franks</u>, this would start the time for filing well over a month after the EEOC mailed the original letters, suggesting that Kerr and Green Smith may have thus benefitted from exactly the kind of "manipulable open-ended time extension" which has caused us concern in the past. See <u>Franks</u>, 495 F.2d at 404; <u>Zillyette</u>, 179 F.3d at 1340.

First, although they had both returned the forms requesting RTS letters in early January, neither Kerr nor Green Smith called to check on the status of the requests when nothing arrived after several weeks. The letters were mailed, per EEOC office procedures, no later than 9 January 2003. Given three days for

---

notice of certified letter on 5 September 1996, again on 10 September, where letter was not retrieved by complainant until sometime between 10 and 20 September and suit was not filed until 12 December 1996); <u>Law v. Hercules, Inc.</u>, 713 F.2d 691, 693 (11th Cir. 1982) (dismissing suit on timeliness grounds where plaintiff's 17 year-old son picked up EEOC letter at post office as directed by complainant's wife and left it on the kitchen table); <u>Bell</u>, 693 F.2d at 1087 (suit filed 20 March 1980 deemed untimely where wife received letter on 18 December 1979 at residence while complainant was out of town so he did not actually receive it until 26 December 1979). But <u>see</u>, e.g., <u>Stallworth v. Wells Fargo Armored Servs. Corp.</u>, 936 F.3d 522, 525 (11th Cir. 1991) (presumption of receipt did not apply where RTS letter signed for by 25 year-old nephew was never actually given to complainant, because although temporarily living at a different address, complainant had diligently checked her mail for the letter and EEOC had failed to mail a copy to her attorney as requested); <u>Lewis v. Conners Steel Co.</u>, 673 F.2d 1240, 1243 (11th Cir. 1982) (plaintiff who can establish RTS letter sent to incorrect address through no fault of his should not be held to limitation period beginning to run at time of delivery); <u>Franks</u>, 495 F.2d at 403-04 (where RTS letter delivered to plaintiff's address but intercepted and lost by nine year-old nephew, limitations period did not begin to run until actual receipt, one year later), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 424 U.S. 747 (1976).

12

delivery of mail,[9] Kerr and Green Smith should have received the RTS letters by 12 January 2003, or called to inquire why they had not.  Second, when they received copies of the letters along with the rest of their EEOC files in mid February, neither called to inquire as to the date on the letters, even though these dates apparently predated their receipt of the letters by roughly six weeks, and even though photocopied hole punch marks at the top of the letters clearly indicated that they were file copies,  not the original copies mailed.  When Kerr and Green Smith received copies of the RTS letters in mid-February, they still had nearly two months during which they could have filed and avoided the entire limitations issue.  Instead, they delayed filing and forced the issue unnecessarily.

We find that Kerr and Green Smith, in failing to make any inquiry regarding their late or missing letters, failed to assume the minimal responsibility or to put forth the minimal effort necessary to resolve their claims in this case.  Their failure to receive the letters was at least in part due to lack of diligence in following up their requests.  A 90-day period beginning on 12 January would end in mid April.  The 15 May 2003 claims were thus untimely filed by nearly a month.

---

[9]When the date of receipt is in dispute, this court has applied a presumption of three days for receipt by mail, akin to the time period set out in Fed. R. Civ. P. 6(e). Zillyette, 179 F.3d at 1342.

13

### III. CONCLUSION

In this appeal, we were called upon to consider whether, under the test established in our circuit, actual knowledge on the part of a complainant that the EEOC has terminated its investigation of her claim, as evidenced by her request for an RTS letter, may be sufficient to cause the time for filing to begin running within a reasonable time after written notice of complainant's right to sue has been mailed. Based on our review of the law in our circuit, we have concluded that it is, and that the ADEA complaint filed by Kerr and Green Smith was untimely. Accordingly, the district court's grant of summary judgment in favor of McDonald's Corporation is **AFFIRMED**.