In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1596

SHERRY L. DETATA,

*Plaintiff-Appellant*,

*v.*

ROLLPRINT PACKAGING PRODUCTS INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 5064—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED OCTOBER 6, 2010—DECIDED JANUARY 12, 2011

Before EASTERBROOK, *Chief Judge*, and WOOD and
EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* The only question before us
in this appeal is whether Sherry DeTata's lawsuit com-
plaining of sex discrimination at the hands of her em-
ployer, Rollprint Packaging Products, Inc., was filed too
late. Everyone agrees that she properly filed a charge
of discrimination with the Equal Employment Oppor-
tunity Commission ("EEOC"); the problem centers

around what happened next. The EEOC dismissed DeTata's case, and it mailed a right-to-sue letter, but that letter never reached DeTata and was returned to the agency as undeliverable. DeTata learned about the agency's action only when she telephoned to check on her case. At that point, the EEOC re-sent the right-to-sue letter and a copy of her file; she filed this suit within two months of receiving those materials. The district court, however, using the date of DeTata's phone call as the beginning of the 90-day period in which she had to file her suit, granted Rollprint's motion to dismiss on the ground that her suit was untimely. We conclude that, under the facts of this case, the telephone call did not satisfy the notice requirements of 42 U.S.C. § 2000e-5(f)(1). We therefore vacate the district court's judgment and remand the case for further proceedings.

# I

DeTata's tenure at Rollprint was fleeting: she worked there for only eight days before the company fired her without explanation. She alleges, however, that during that short time her male colleagues subjected her to sexual advances and inappropriate comments about her physical appearance. She asserts that she experienced a "pervasive pattern of sexual harassment," which management "condoned, fostered, and promoted." She complained about the conduct to her immediate supervisor, and Rollprint fired her a few days later.

DeTata then contacted Jewell Bracko, the Director of the American Civil Rights Trust ("ACRT"), for assistance

in drafting a letter to Rollprint and in filing an EEOC charge. The record reveals very little about DeTata's relationship with Bracko; it is not even clear whether DeTata ever hired Bracko to represent her before the EEOC. Rollprint insists that Bracko acted as DeTata's attorney and, to support its contention, it points to a letter that Bracko sent to Rollprint on DeTata's behalf. In the letter, which Bracko wrote on ACRT's letterhead and sent on July 16, 2008 (the day after DeTata was fired), Bracko instructs Rollprint "not [to] contact Ms. DeTata for any reason." The letter further instructs that "any communication should be conducted through this office," and informs Rollprint that "a civil rights complaint has been filed through [Bracko's] office on behalf of Ms. Sherry DeTata with the EEOC for sexual harassment and retaliation." In fact, as of then nothing had been filed. DeTata did not file her official charge with the EEOC until December 2008, and Bracko's name does not appear on those papers. Cutting against the inference that Bracko was DeTata's lawyer is the fact that on her intake questionnaire for the EEOC, DeTata listed Bracko as a "friend" and provided his address and telephone number in response to the question asking for "the name of a person we can contact if we are unable to reach you." And when asked if she had "sought help about this situation from . . . an attorney, or any other source," DeTata wrote that she "contacted [the] American Civil Rights Trust regarding the matter and was advised by council [*sic*] to file a complaint with the EEOC."

On March 2, 2009, the EEOC dismissed DeTata's administrative claim and issued a right-to-sue letter. Although

the EEOC correctly prepared the letter with DeTata's name and Chicago address, it sent the letter only to Bracko instead, using the ACRT's address in Mississippi. But DeTata contends that Bracko never received the letter; after three delivery attempts on March 4, 9, and 19, the letter was returned as undeliverable, and both the original letter and the envelope were placed in DeTata's file. (More evidence would be necessary before we knew whether Bracko never received the letter, or if he just refused or failed to acknowledge receipt. Given our disposition of the case, we need not resolve that question here.) When DeTata later called the EEOC to inquire about her case, the EEOC employee she reached told her that the file was a mess, that the agency had dismissed her charge of discrimination, and that it had issued a right-to-sue letter. The EEOC employee was not able to answer all of DeTata's questions nor to say with certainty when her right-to-sue letter had been issued, because the agency had misplaced her file. DeTata asked that the EEOC resend her right-to-sue letter and, if found, a copy of her file. There was some delay in sending these materials because it took the EEOC more than a month and a half to find DeTata's file. The EEOC eventually sent the materials on June 18, 2009, with a cover letter stating that "[a]lthough the 90-day RTS period has expired, you submitted your request timely and the problem was that the file could not be located by our clerk." DeTata received the package a few days later; it included a copy of the right-to-sue letter dated March 2, 2009. The letter stated that her "lawsuit must be filed within 90 days of your receipt of this notice."

DeTata filed a *pro se* complaint in federal court on August 18, 2009, asserting that Rollprint violated Title VII by creating a hostile work environment and by retaliating against her for complaining about the sexual harassment she experienced. See 42 U.S.C. §§ 2000e *et seq.* In her complaint DeTata explained that "due to a miscommunication" by the EEOC her right-to-sue letter was not delivered when it should have been, and that this delay was why she had filed her suit "after the notice expired." Rollprint moved to dismiss the complaint as untimely because DeTata had filed suit 170 days after the EEOC initially issued its right-to-sue letter in March, well beyond the 90 days permitted by 42 U.S.C. § 2000e-5(f)(1). In response DeTata pointed to the EEOC's mishandling of her administrative claim and her own diligent efforts to prosecute her case. To support her account of the EEOC's missteps, DeTata submitted a declaration from Tyrone Irvin, an EEOC employee who had reviewed DeTata's file. Irvin stated that DeTata had contacted the EEOC in "May 2009," and she was informed then that her claim had been dismissed and that her right-to-sue letter had been issued in March. According to Irvin, DeTata requested a copy of her investigative file when she called, but it was not sent until June 18, 2009, "due to EEOC staffing issues." Irvin also stated that an EEOC investigator had communicated with Bracko during the investigation of DeTata's complaint, but acknowledged that "according to [the EEOC's] records, in February 2009, Mr. Bracko informed the EEOC that he would be out of the country, in Brazil, at least until the end of March 2009." Irvin's

declaration does not specify on what date in May DeTata called, nor does it identify who spoke with her or provide any other details about the conversation or Bracko's role in the case.

The district court conducted a hearing on Rollprint's motion on October 19, 2009. Initially the court rejected Rollprint's timeliness objection because the court was "actually satisfied from the submissions from the EEOC that Ms. DeTata has acted appropriately promptly." But Rollprint insisted that the timeliness question was more complicated because Irvin's declaration demonstrated that DeTata had possessed actual knowledge that the EEOC issued her right-to-sue letter as early as May 2009, when she phoned the agency. Without citing to any legal authority, Rollprint contended that "the case law is clear that the receipt of the letter is not really the precipitating event. It's her actual notice." Although Rollprint conceded that DeTata did not actually receive her right-to-sue letter until "sometime in late June," the company maintained that oral notice was sufficient and that the crucial question was when in May she had contacted the EEOC. If DeTata called before May 18, 2009, Rollprint argued, then her August 18 suit was untimely.

This prompted the district court to seek clarification. It asked DeTata to identify when she had learned that a right-to-sue letter had been issued, not when she received a physical copy of the letter. DeTata, who was still *pro se* at that time, responded that she had learned about the letter when she telephoned the EEOC "in late

April" to inquire about her file, though "no one really knew the exact date" the letter had been issued because the EEOC had misplaced her file for over a month. Even if she spoke with someone at the EEOC in April, DeTata maintained, she "couldn't take their word for it if [her right-to-sue notice] was issued or not" because her case had been so mishandled. The court did not ask DeTata if the EEOC had explained the limitations period or told her that her call would start the filing clock.

The district court agreed with Rollprint that DeTata's suit was untimely. The court credited DeTata's statements regarding the misplaced file, her actual receipt of the letter in late June, and her assertion that the EEOC did not tell her during the phone call when her letter was initially issued. But after resolving these facts in DeTata's favor, the court concluded that her 90-day filing period began running from the time of her call. As the court saw it, "what the law says is that if you know that the letter has been issued, then the 90 days begins to run." Because DeTata conceded that she spoke with someone at the EEOC in April, the court reasoned, her 90-day filing period began at the end of April at the latest, and that meant she had until the end of July to file suit. The court apparently overlooked the discrepancy between DeTata's statement that she called the EEOC in April and Irvin's declaration that she contacted the agency in May. The court dismissed the complaint without prejudice and gave DeTata 30 days to file an amended complaint that included any additional information she had to address the issue of timeliness.

At this point, DeTata hired an attorney and filed an amended complaint. Rollprint again moved to dismiss, this time arguing that DeTata's statement in open court that she had learned about the right-to-sue letter in April 2009 was conclusive evidence that her August 18 suit was untimely. It also advanced an alternative argument that Bracko's letter to Rollprint and Irvin's declaration showed that Bracko was acting as DeTata's legal representative, and, thus, DeTata received "constructive notice" of her right to sue when the EEOC mailed the March 2 letter to Bracko. DeTata countered that the 90-day period does not start running until after a claimant actually receives her right-to-sue letter. As for her relationship with Bracko, DeTata insisted that she had always proceeded *pro se*, even when filing her EEOC charge. The district court again granted Rollprint's motion to dismiss, noting that DeTata "acknowledged in open court that she had actual notice" of her right to sue "no later than April 30." Thus, it ruled, the complaint DeTata filed in August was "well-beyond the 90-day window and many weeks after she admittedly received a copy of the right-to-sue letter" in June. The court's order did not address the cases DeTata had cited establishing that the 90-day period starts when the letter is actually received, nor did it discuss its finding that an oral communication constitutes sufficient notice. Because the court found that DeTata's call started the filing clock, it also had no occasion to consider whether Bracko was serving as DeTata's agent.

DeTata promptly moved for reconsideration and explained that she "misspoke [during the October 19

hearing] when she indicated a conversation with the EEOC took place in 'April' 2009 because that conversation actually took place in 'May' 2009." DeTata offered her own affidavit, explaining that "for reasons that are unclear to me, other than my nervousness before the court and in responding to the court's questions . . . I inadvertently and repeatedly referred to a discussion with the EEOC in 'April' 2009 when, in fact, as stated in Mr. Irvin's 'Declaration,' my conversation with the EEOC regarding my file was in 'May' 2009." During the hearing on DeTata's motion, the district court asked DeTata to explain her shift in position. Noting that DeTata had been proceeding *pro se* at the time of the October 19 hearing, DeTata's attorney explained that she had not realized that she would need to be prepared with evidence about the timeliness question. In the end, the court denied DeTata's request for reconsideration without prejudice and explained that if she wanted the court to review the issue further she could "move within seven days for a hearing and accompany that motion with a representation about her willingness to pay the fees incurred as a result of her apparent failure to read the court's orders beginning in October." DeTata chose instead to file this appeal.

**II**

At its broadest level, the issue before us is whether the 90-day filing period specified by 42 U.S.C. § 2000e-5(f)(1) begins to run only upon written notice of the right to sue or if an oral communication with the EEOC

may ever suffice. Subsidiary points include whether the law requires proof of receipt of the written notice; what proof of receipt might be adequate; and what would have to be covered in an oral communication, if that is permissible. In addition to these questions, we must also consider Rollprint's argument that the EEOC's unsuccessful effort to send the right-to-sue letter to Bracko sufficed to start the 90-day clock.

Section 2000e-5(f)(1) requires the EEOC to notify a complaining party when it dismisses a charge of discrimination. At that point, according to the statute, "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." The statute does not specify what form the notice must take or what information must be included. But we have assumed that written notice is required and have consistently held (as have our sister circuits) that the 90-day period does not start running until the claimant (or her agent) actually receives the right-to-sue letter from the EEOC. See, *e.g.*, *Prince v. Stewart*, 580 F.3d 571, 574 (7th Cir. 2009) (explaining that the limitations period begins to run "when the claimant *receives* the letter, not when it was sent"); *Threadgill v. Moore, U.S.A., Inc.*, 269 F.3d 848, 849-50 (7th Cir. 2001) (noting that actual receipt of right-to-sue notice by claimant or her attorney starts 90-day period); *Houston v. Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999) (holding that when EEOC sends right-to-sue letter by certified mail, 90-day period begins to run when plaintiff actually receives letter); *Archie v. Chi. Truck Drivers, Helpers & Warehouse Workers Union*, 585 F.2d 210, 215 (7th Cir. 1978) ("It is

clearly the rule that the 'giving of . . . notice' language in 42 U.S.C. § 2000e-5(f)(1) refers . . . at a minimum to the date on which such notice is delivered to the address to which it is mailed."). See also *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (90 days runs from date of receipt of notice); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (same). Neither side in the present case has challenged this understanding of the statute. The parties do not dispute that DeTata did not receive her written notice until a few days after the EEOC resent her materials on June 18. If her actual receipt started the filing clock, then DeTata should have had 90 days from that date to file her complaint, and, by filing on August 18, her suit would have been timely.

We have never considered whether oral notice may also be sufficient, but three of our sister circuits have held that sometimes an oral communication may start the limitations period. In *Ball v. Abbott Advertising, Inc.*, 864 F.2d 419 (6th Cir. 1988), the plaintiff did not receive a right-to-sue letter, and so her lawyer called the EEOC and learned that the letter had been sent a month earlier but had been returned as undeliverable because the plaintiff had neglected to update her address. *Id.* at 420. Ball filed suit within 90 days of receiving the reissued notice, but more than eight months after the attorney's telephone conversation with the EEOC (and more than nine months after the original letter was sent). *Id.* In an affidavit, Ball's attorney conceded that sufficient notice had been given during the call. This was enough to lead the Sixth Circuit to hold that Ball's suit was time-barred

because she received "actual notice, through counsel." *Id.* at 421.

The Third Circuit has also held that "oral notice can suffice to start the 90-day period" if it is "equivalent to written notice." *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 116 (3d Cir. 2003). The court reasoned that "[i]t simply would not make sense to force courts and defendants to wait for a specific form of notice in situations where a plaintiff is fully aware of the deadline he or she must meet to prosecute a lawsuit." *Id.* Based on the record in *Ebbert*, however, the court concluded that the plaintiff's conversation with an EEOC investigator did not satisfy the statutory requirements for notice because "no evidence show[ed] that Ebbert was told or otherwise knew the 90 days would start running from the date of the [phone] conversation." *Id.* The court highlighted the fact that the defendant had not produced evidence of what was said during Ebbert's conversation with the EEOC, even though it was the company's burden to prove that "oral notice was as comprehensive as the written version." *Id.* at 116-17. The court also explained that its standard for oral notice was higher than the "less complete" notice requirements established in *Ball. Id.* at 116 n.16. It speculated that the lower standard in *Ball* was based on the fact that oral notice had been given to Ball's attorney, who would have understood the significance of the right-to-sue information and its relation to the limitations period, and that Ball bore some responsibility for the delayed receipt by not informing the EEOC of her address change. *Id.*

Most recently the Eleventh Circuit held that "a complainant's actual knowledge that investigation of her claim has been terminated may be sufficient to cause the time for filing to begin running within a reasonable time after notice of the complainant's requested right-to-sue notice has been mailed." *Kerr*, 427 F.3d at 948. During phone conversations with an EEOC investigator in late December 2002, the plaintiffs in *Kerr* learned that their cases were about to be dismissed, and the investigator asked whether they wanted the agency to issue right-to-sue notices. *Id.* at 949. Both plaintiffs orally requested the notices and followed up by returning the written forms that the agency sent to confirm their requests in early January 2003. *Id.* Neither plaintiff received her letter, however, until mid-February, and both filed suit in mid-May. *Id.* Based on the defendant's detailed evidence of the EEOC's mailing procedures, the Eleventh Circuit determined that the agency mailed the plaintiffs' notices no later than January 9, 2003. *Id.* at 950-52. Applying its presumption that notice is received within three days of mailing and its rule that the plaintiff bears the burden of proving timeliness, the Eleventh Circuit concluded that the suits were untimely. *Id*. at 951-53. The court noted that "[t]he date of actual receipt is material . . . only if there was not adequate notice prior to actual receipt," but it concluded that because the plaintiffs regularly communicated with the EEOC investigator, they had sufficient notice of the dismissal of their claims and the issuance of their right-to-sue letters in early January. *Id.* at 952-53. Emphasizing that plaintiffs must assume some "mini-

mum responsibility" for the "expeditious resolution" of their claims, the court blamed plaintiffs for not following up when their letters did not arrive in January and determined that equitable tolling did not apply. *Id.*

But *Ball* and *Kerr* are unlike DeTata's case. The holdings in the former two cases reflect the fact that the plaintiffs were somehow at fault for the delayed receipt of their written notices. DeTata, in contrast (as far as this record shows) never failed to update her mailing address or to follow her case diligently. Instead, it was the EEOC's mishandling of DeTata's case that caused the delay, when it misaddressed her right-to-sue letter and lost her file for over a month. As we have commented before, a "plaintiff should not lose the right to sue because of fortuitous circumstances or events beyond [her] control which delay receipt of the EEOC's notice." *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir. 1984).

Even if we were to adopt the *Ebbert* court's rule, under which an oral communication may qualify as statutory notice if equivalent to written notice, Rollpoint would be no better off. The EEOC has identified four requirements for a proper notice of a complainant's right to sue: "(1) [a]uthorization to the aggrieved person to bring a civil action under title VII . . . within 90 days from receipt of such authorization; (2) [a]dvice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate; (3) [a] copy of the charge; [and] (4) [t]he Commission's decision, determination, or dismissal, as appropriate." 29 C.F.R. § 1601.28(e).

There is no evidence in this case that the EEOC's oral communication to DeTata met any of the first three requirements. Most importantly, there is nothing in the record to suggest that the EEOC ever told DeTata when her 90-day clock began to run.

Notice is inadequate when the EEOC fails to inform a claimant of the time within which suit must be filed. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). As an example of insufficient notice, the Court in *Baldwin* referred to a case from the Ninth Circuit, which held that notice was insufficient under § 2000e-5(f)(1) when the EEOC failed to advise the plaintiff of her right to sue and to explain the limitations period for filing suit. *Id.* (discussing *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292 (9th Cir. 1974)). Particularly because the limitations period is so short, it makes sense that notice must include an explanation of when the filing clock begins to run. Because a failure to sue within 90 days is an affirmative defense, *cf.* FED. R. CIV. P. 8(c)(1) (next to last bullet point), Rollprint had the burden of showing that DeTata's complaint was filed more than 90 days after she received sufficient notice of her right to sue. See *Prince*, 580 F.3d at 574; *Houston*, 185 F.3d at 838. That means that the absence of evidence in the record about what the EEOC told DeTata—and in particular the lack of evidence that they discussed the 90-day period for filing suit—cuts against Rollpoint.

As an alternative basis for affirming, Rollprint also argues that DeTata received notice of her right-to-sue when the EEOC initially sent her letter to Bracko, who,

Rollprint asserts, was acting as DeTata's legal representative. That characterization, however, is hotly contested, and DeTata has some evidence supporting her position. DeTata insists that she filed her EEOC charge *pro se* and never retained Bracko as her attorney. While actual receipt of the right-to-sue letter by a claimant's attorney can start the 90-day clock, *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005), if the claimant disputes that the attorney represented her at the time the letter was received, then the district court must hold an evidentiary hearing to decide the question, *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1313-14 (7th Cir. 1984). Rollpoint thinks that Bracko's letter to Rollprint and Irvin's declaration signal that Bracko was actively involved in DeTata's case in some capacity, but they do not answer the question "what capacity." DeTata's responses to the EEOC questionnaire minimize Bracko's role and suggest that he was not her attorney. Finally, even if Bracko was acting as DeTata's agent for notice purposes, Rollprint overlooks the fact that Bracko may never have received the right-to-sue letter. He had notified the EEOC that he would be traveling abroad, and the letter was returned as undeliverable, as Irvin's declaration explains. On the present record, we cannot conclude that the letter the EEOC sent to Bracko on March 2 constituted notice to DeTata.

### III

We VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion. In

particular, it will be up to the parties on remand to develop any further evidence that may be relevant to a better understanding of Bracko's role in the case.