**ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, Plaintiff,**

v.

**SAVITS–DANIEL TRAVEL CENTERS, INC., and Marjorie Crossfield, as Personal Representative of the Estate of Kimberlyn S. Clarke, a/k/a Kimberlyn Shovon Clarke, Deceased, Defendants.**

**Case No. 13–61267–CIV.**

United States District Court, S.D. Florida.

Signed May 12, 2014.
Entered May 13, 2014.

Michael Adam Packer, Marshall Dennehey Warner Coleman & Goggin, P.C., Fort Lauderdale, FL, for Plaintiff.

Barry Ted Shevlin, Bay Harbour Islands, FL, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Plaintiff Endurance American Specialty Insurance Company's Motion for Final Summary Judgment (the "Motion") [DE 25], filed herein on January 24, 2014. The Court has carefully considered the Motion [DE 25], the Responses [DE 33; DE 35], the Replies [DE 42; DE 43], the parties' arguments at the hearing on May 9, 2014, and the record herein. The Court is otherwise fully advised in the premises.

## I. BACKGROUND

The parties have provided in their respective Statements of Material Facts [DE 26; DE 33 at 2–4; DE 35 at 2–6] various factual assertions that are supported by the record. In some instances, the parties have not contested their adversaries' assertions. The Court will deem some of these uncontested factual assertions to be admitted. See S.D. Fla. L.R. 56.1(b); Fed. R.Civ.P. 56(c), (e). The Court will now set forth the relevant admitted facts.[1]

This action is for a declaratory judgment to determine an insurer's obligations to defend or indemnify the insured under an insurance policy. [DE 1 ¶ 1]. The parties to this declaratory action are Plaintiff En-

---

1. Travel Centers's Statement of Material Facts [DE 33 at 2–4] does not comply with the requirement under the Local Rules that "[s]tatements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant." See S.D. Fla. L.R. 56.1(a). Travel Centers's Statement [DE 33 at 2–4] fails to correspond with Plaintiff's Statement of Undisputed Material Facts [DE 26], and because of that failure, the Court cannot easily identify which of Plaintiff's specific factual assertions Travel Centers intends to dispute.

durance Specialty Insurance Company ("Endurance" or "Plaintiff"), Defendant Savits–Daniel Travel Centers, Inc. ("Travel Centers"), and Defendant Marjorie Crossfield, as personal representative of the estate of Kimberlyn S. Clarke, a/k/a Kimberlyn Shovon Clarke, deceased (the "Estate" and together with Travel Centers, "Defendants"). [*Id.*].

Travel Centers was the named insured on a Commercial General Liability Policy bearing Policy Number CBP10000133500) (the "Policy"), as issued by Endurance as the insurer, with a policy period of June 5, 2012, through June 5, 2013. [DE 26 ¶ 1; DE 35 ¶ 1]. The Policy covered Travel Centers for liability arising out of its ownership of the premises located at 4690 U.S. Highway 27, Weston, Broward County, Florida 33332 (the "Property"). [DE 26 ¶ 1; DE 35 ¶ 1]. Café 27, a business establishment functioning as a bar, operated on the Property during the policy period. [DE 26 ¶ 3; DE 35 ¶ 3].

On September 19, 2012, Kimberlyn S. Clarke ("Decedent") attended an event hosted on the Property by Café 27. [DE 26 ¶ 4; DE 35 ¶ 4]. While Decedent was within the Property, an altercation took place, and an individual—who was attempting to rob a separate individual—disbursed pepper spray into a crowd. [DE 26 ¶ 5; DE 35 ¶ 5; DE 35–1 at 4]. According to the subsequent police report, Decedent was exposed to the pepper spray, fell to the ground, and hit her head on the rear bumper of a van in the parking lot. [DE 26 ¶ 6; DE 35 ¶ 6]. Paramedics then transported Decedent, who was in critical condition, to a local hospital, and Decedent died five (5) days later. [DE 26 ¶ 6; DE 35 ¶ 6]. The medical examiner, Dr. Lance Davis ("Dr. Davis"), concluded that Decedent's cause of death was "multiple organ failure due to an anoxic encephalopathy due to an anoxic event following exposure to a respiratory irritant (pepper spray)." [DE 26 ¶ 6; DE 35 ¶ 6].

As a result of Decedent's death, the Estate has made a claim and filed a lawsuit (the "State Court Action") against Travel Centers for wrongful death injuries. [DE 26 ¶ 7; DE 35 ¶ 7]. In the State Court Action, the amended complaint (the "State Court Complaint") alleges that "an altercation ensued during which pepper spray was released and inhaled by [Decedent]" and that Decedent "died as a result of inhaling the pepper spray." [DE 26–3 ¶¶ 11–12]; *see also* [DE 26 ¶ 8; DE 35 ¶ 8]. Additionally, the Estate alleges that Travel Centers breached its duty to maintain a safe and hazard-free environment. [DE 26 ¶ 8; DE 35 ¶ 8].

Endurance maintains that the Policy does not cover the circumstances underlying the State Court Action. *See* [DE 1]. Endurance focuses on the following exclusion in the Policy:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \* \*

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * * *

**2. Exclusions This insurance does not apply to:**

* * * *

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

* * * *

**SECTION V—DEFINITIONS**

* * * *

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * * *

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*See* [DE 1 ¶ 21; DE 26–1 at 10–12, 22, 24; DE 35 at 4–5]. Endurance additionally focuses on a separate exclusion contained in the following endorsement:

**ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

*MOLD, FUNGUS, BACTERIA, VIRUS AND ORGANIC*

*PATHOGEN EXCLUSION*

It is hereby agreed that this policy shall not apply:

1. to "bodily injury", "property damage", or "personal and advertising injury";

2. to damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;

3. to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens"; or

4. to any "suit" or administrative or regulatory procedure or process in which an insured may be involved as a party;

arising, directly or indirectly, or in concurrence or in any sequence out of or in any way relating to actual, alleged or threatened existence, discharge, dispersal, release or escape of "organic pathogens," whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

This insurance shall not apply to any "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense arising out of or in any way related to any form of "organic pathogens," whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is intentionally caused, or whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of the insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or

virus, including but not limited to their byproducts, such as mycotoxins, mildew, or biogenic aerosols.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

[DE 1 ¶ 22; DE 26–1 at 38; DE 35 at 5].

Relying on these provisions, Endurance filed the instant declaratory judgment action on June 10, 2013, seeking a declaration that it has no duty under the Policy to indemnify or defend Travel Centers for any claims asserted by the Estate in the State Court Action. *See* [DE 1]. Through the instant Motion [DE 25], Endurance argues that there are no genuine issues of material fact and that it is entitled to a declaratory judgment as a matter of law.

## II. *STANDARD OF REVIEW*

Under Rule 56(a) of the Federal Rules of Civil Procedure (the "Rules"), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Sauve v. Lamberti,* 597 F.Supp.2d 1312, 1315 (S.D.Fla.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.,* 427 F.3d 947, 951 (11th Cir.2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast,* 492 Fed.Appx. 16, 26 (11th Cir.2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.,* 716 F.3d 525, 530 (11th Cir.2013) (citation omitted).

## III. *DISCUSSION*

The Motion [DE 25] poses two issues for the Court to decide. First, the Court

must determine whether there is a genuine dispute of fact as to the cause of Decedent's death. If there is a genuine dispute as to that cause, the Court cannot determine whether the circumstances surrounding the death fall within the Policy's coverage, and summary judgment is unwarranted.

Second—assuming there is no genuine dispute of fact as to the cause of Decedent's death—the Court must determine whether the Policy provides coverage for Decedent's death. If the Policy applies, then Endurance has a duty to defend—and potentially to indemnify—Travel Centers in the State Court Action. If the Policy does not apply, then Endurance is entitled to summary judgment and a declaration of non-coverage.

**A.** ***Whether There Is A Genuine Dispute of Fact as to the Cause of Decedent's Death***

Endurance contends that there is no genuine dispute that Decedent died as a result of inhaling pepper spray. In support, Endurance relies on the autopsy report and deposition testimony of Dr. Davis, the medical examiner who conducted the autopsy of Decedent's body. Dr. Davis concludes that "[t]he ultimate cause [of Decedent's death] was due to the inhalation of pepper spray." [DE 25–4 at 9]; *see also* [DE 25–2 at 1, 6]. Additionally, Endurance notes that the Estate's amended complaint in the State Court Action alleges that Decedent "died as a result of inhaling the pepper spray." [DE 26–3 ¶ 12].

Defendants, nonetheless, maintain that a genuine dispute of fact remains as to whether pepper spray caused Decedent's death. In support, Defendants rely on the following portions of the record:

- The police report states that there was "commotion," that Decedent fell "to the ground hitting her head on the rear bumper of a van in the parking lot," and that Decedent "pass[ed] out and sustain[ed] a possible head injury, *see* [DE 35–1 at 4];

- Dr. Davis states that "[t]he exact pathophysiologic event that triggered the collapse is uncertain" and that the autopsy alone, without additional information supplied by law enforcement, did not reveal that pepper spray had anything to do with the death, *see* [DE 25–2 at 6; DE 25–4 at 6, 11–12]; and

- Dr. Davis states that no toxicology assessments were performed because of the length in time between the injury and the autopsy, *see* [DE 25–4 at 5].

Defendants, however, do not provide any evidence—from a fact or expert witness or otherwise—rebutting Dr. Davis's ultimate conclusions.

■■■■ For the following reasons, the Court agrees with Endurance and finds that there is no genuine dispute of fact that Decedent's death was caused by exposure to pepper spray. "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint." *Jones v. Fla. Ins. Guar. Ass'n,* 908 So.2d 435, 442–43 (Fla.2005) (internal citations omitted). Moreover, when determining whether an insurer has a duty to defend, "[t]he trial court is restricted to the allegations set forth in the complaint, regardless of what the insured or others say actually happened." *State Farm Fire & Cas. Co. v. Tippett,* 864 So.2d 31, 33 (Fla. 4th DCA 2003).

The Court, therefore, must limit its analysis to the allegations in the State Court Complaint. In that Complaint, the Estate alleges that pepper spray caused Dece-

dent's death. *See* [DE 26-3 ¶¶ 11-12]. Defendants have not provided any compelling reason why that allegation does not control. Accordingly, that fact is beyond dispute for the purposes of the instant declaratory judgment action.[2]

**B.** *Whether the Policy Provides Coverage With Respect to Decedent's Death*

 Under the pollutant exclusion, the Policy does not cover " '[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.' " [DE 26-1 at 11-12]. Therefore, the Court must determine whether Decedent's death—as caused by pepper spray—arises out of the discharge of "pollutants." More specifically, the Court must determine if pepper spray is a "pollutant," as defined under the Policy.

In making that determination, the Court, sitting in diversity, applies state law as determined by the Florida Supreme Court. *See Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1177 (11th Cir. 2013). In *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, the Florida Supreme Court considered whether ammonia and certain pesticides qualified as "pollutants" under the same pollutant exclusion currently at issue. *See* 711 So.2d 1135 (Fla.1998). The Court set forth the following rule governing the interpretation of exclusionary provisions in insurance policies:

> [E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insur-

er who usually drafts the policy. However, [o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.

*Id.* at 1138 (internal quotation marks and citation omitted). The Court then considered whether to apply the doctrine of reasonable expectations, under which "the insured's expectations as to the scope of coverage is upheld provided that such expectations are objectively reasonable." *Id.* at 1140. With respect to ambiguous policy provisions, the Court reasoned that there is no need for the doctrine "because in Florida ambiguities are construed against the insurer." *Id.* With respect to unambiguous policy provisions, the Court reasoned that the doctrine is impermissible because it would allow a court "to rewrite [a] contract and the basis upon which the premiums are charged." *Id.* Accordingly, the Court "decline[d] to adopt the doctrine of reasonable expectations." *Id.*

Turning to the pollutant exclusion, the Court found the language to be "clear and unambiguous." *Id.* at 1138. The Court rejected arguments that the exclusion should be limited to "industrial" or "environmental" pollution, reasoning that "[a]s a court, we cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way." *Id.* at 1138-39. The Court concluded that the ammonia and pesticides at issue were "pollu-

---

**2.** Furthermore, the evidence on the record does not reflect any genuine dispute as to that fact. The medical examiner testifies that pepper spray caused Decedent's death, and there is no testimony or other evidence rebutting that conclusion. It would be unreasonable

for a jury to view the record as a whole—including the medical examiner's unrebutted conclusions—and find that pepper spray did not cause the death. Thus, there would be no genuine dispute of fact, even if the Court looked beyond the State Court Complaint.

**1303**

tants," as defined under the policies' pollutant exclusions. *Id.* at 1141.

Applying that precedent to the instant matter, the Court concludes that pepper spray is a "pollutant." The Policy defines a "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." [DE 26–1 at 24]. The Fifth Circuit—as cited by the Florida Supreme Court—stated that "[a]lthough the policy does not define 'irritant,' Webster's Dictionary defines it as 'an agent by which irritation is produced (a chemical).'" *See Deni Assocs. of Fla. Inc.*, 711 So.2d at 1139 (quoting *Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 476 (5th Cir.1996)). A 2001 study by the National Institute of Justice states that exposure to pepper spray "irritates the skin, eyes, and mucous membranes of the upper respiratory tract." [DE 25–3 at 1]. Dr. Davis testifies that pepper spray "is an irritant that causes inflammation in your airways, excess mucus production," "is an irritant of the mucosal membranes that line all the respiratory passages," and "is an irritant to [your eyes and ears] as well." [DE 25 at 9–10].

Thus, pepper spray falls squarely within the meaning of "irritant" and qualifies as a "pollutant" under the Policy's clear, unambiguous terms. The Policy's pollutant exclusion—which excludes coverage for bodily injury arising out of the discharge of "pollutants," *see* [DE 26–1 at 11–12]—applies to the circumstances surrounding De-

cedent's death. Consequently, coverage is excluded, and Endurance does not have any duty to defend or indemnify Travel Centers in the State Court Action.[3]

Furthermore, the Court is unpersuaded by Defendants' arguments in support of coverage. First, Defendants suggest that the pollutant exclusion requires a showing that Decedent would not have died "but for" the pepper spray. Defendants maintain that the exclusion requires more than a showing that the death "arose out of" a pollutant. However, the Policy's plain language does not support Defendants' position, and in any case, there is no genuine dispute that the pepper spray was a "but for" cause of Decedent's death.

Second, Defendants rely on a Policy endorsement that provides coverage for pollutant-related damages caused by riot, civil commotion, or vandalism. That endorsement, however, applies to property damage and not to bodily injury. *See* [DE 1–3 at 66, 67, 70, 75].

■ Finally, Defendants argue that the pollutant exclusion was not intended to exclude coverage in these circumstances. That argument is inapposite. The Court cannot employ the doctrine of reasonable expectations or otherwise rewrite the Policy's clear terms. *See Deni Assocs. of Fla., Inc.*, 711 So.2d at 1139 ("As a court, we cannot place limitations upon the plain language of a policy exclusion simply because

---

**3.** In addition to the pollutant exclusion, Endurance relies on the Policy's exclusion with respect to "organic pathogens." Specifically, the Policy excludes coverage for "any 'suit' ... arising, directly or indirectly, ... [from] discharge ... of 'organic pathogens,'" meaning "any organic irritant or contaminant." [DE 26–1 at 38]. Although there is no genuine dispute that pepper spray caused Decedent's death, the record is unclear as to the specific brand and particular composition of

that pepper spray. *See* [DE 26 ¶ 5; DE 33 ¶ 17; DE 35 ¶ 5]. The Court can conclude that pepper spray—regardless of the specific brand or particular composition—is, by its very nature, an irritant. Without a more developed record, however, the Court cannot conclude that the specific irritant inhaled by Decedent is "organic." Therefore, the Court cannot determine at this stage whether the organic pathogen exclusion would apply.

we may think it should have been written that way.").[4]

## IV. CONCLUSION

The Policy does not provide coverage for the circumstances underlying the State Court Action. Given the Estate's allegations in the State Court Complaint and the record in this action, there is no genuine dispute that pepper spray caused Decedent's death. Under the Policy's clear and unambiguous terms, pepper spray is a "pollutant," and the Policy does not cover injuries arising out of "pollutants." Thus, Endurance has no duty under the Policy to defend or indemnify Travel Centers in the State Court Action.

For the foregoing reasons, it is **OR-DERED AND ADJUDGED** as follows:

1. The Motion [DE 25] is hereby **GRANTED**;

2. Plaintiff is entitled to summary judgment; and

3. Pursuant to Rule 58, the Court shall enter a separate judgment.

---

4. Although the Florida Supreme Court declined to consider the applicability of the pollutant exclusion to hypothetical factual scenarios, the Court did state "that insurance policies will not be construed to reach an absurd result." *See Deni Assocs. of Fla., Inc.,*

711 So.2d at 1140 (citing *Travelers Indem. Co. v. Milgen Dev., Inc.,* 297 So.2d 845 (Fla. 3d DCA 1974)). Here, the Court cannot conclude that defining pepper spray as an "irritant" creates an absurd result.